IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GWENDOLYN EVE BOUTWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:20-CV-531-KFP |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gwendolyn Eve Boutwell, seeks judicial review of the Social Security Administration's decision denying her application for Disability Insurance Benefits. The undersigned, having reviewed and considered the record, briefs, applicable regulations, and caselaw, finds the decision of the Commissioner of Social Security must be AFFIRMED.

**I.  STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin*

---

[1] Kilolo Kijakazi is now the Acting Commission of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

*v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.  FACTUAL BACKGROUND

Plaintiff was 49 years old when the Administrative Law Judge ("ALJ") rendered a decision finding Plaintiff not disabled. R. 24–26. Plaintiff has previously worked as a service manager, district manager, fast food manager, and automobile salesperson. R. 24, 36–42. Plaintiff claims she was disabled as of October 19, 2018 (R. 15, 171). She filed for disability on October 31, 2018.[2] R. 173.

On December 10, 2018, Plaintiff's initial application was denied. R. 75. Plaintiff requested a hearing before an ALJ. R. 81–82. The ALJ held a hearing (R. 31–59) and issued a decision on December 20, 2019, finding Plaintiff not disabled. R 15–26, 26. Plaintiff sought review. R. 142–43. The Appeals Council thereafter denied Plaintiff's request for review on June 15, 2020, making the Commissioner's final decision ripe for judicial review. R. 1–3; *see* 42 U.S.C. § 405(g).

## III.  THE ALJ'S DECISION

The ALJ determined Plaintiff has severe impairments of "diabetes mellitus with neuropathy and retinopathy, cervical and lumbar degenerative disc disease, osteoarthritis,

---

[2] Plaintiff alleged disability based on diabetes, gout, GERD, arthritis, PTSD, high blood pressure, high cholesterol, headaches, a left-shoulder injury, and right-knee injury. R. 217.

and a partial tear in her left knee" but that she does not meet the Listing of Impairments in 20 C.F.R § 404, Subpart P, Appendix 1, §§ 1.00(Q), 1.02(A), 1.04(A), (B), or (C), or 9.00. R. 20–21. The ALJ also determined Plaintiff has the residual functional capacity ("RFC") to perform unskilled, light work[3] with certain exertional limitations.[4] R. 21, 25. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were other jobs in the national economy that Plaintiff could perform, such as a collator operator, routing clerk, or sorter. R. 24–25. Accordingly, the ALJ found that Plaintiff had not been under a disability from her alleged onset date of October 19, 2018, through the date of the ALJ's decision on December 20, 2019. R. 26.

## IV.   DISCUSSION

Plaintiff's brief delineates two issues for review: (1) the ALJ failed to properly consider all of Plaintiff's severe impairments and to fully develop the record before determining Plaintiff's RFC; and (2) the ALJ failed to properly evaluate Plaintiff's subjective statements. However, Plaintiff discusses several errors within the first issue. Accordingly, Plaintiff actually presents the following four issues for review: (1) the ALJ erred in determining Plaintiff's severe impairments; (2) the ALJ failed to fully develop the

---

[3] 20 C.F.R. § 404.1567(b) states "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

[4] The ALJ found that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except that she can frequently handle, finger, push and/or pull with both upper extremities. She can frequently stoop, kneel, crouch, and crawl, can frequently climb stairs and ramps, and can occasionally climb ladders, ropes, and scaffolds. She can have occasional exposure to vibrations, unprotected heights, and moving machinery parts. She is able to understand and remember simple instructions, make simple work-related decisions, and carry out simple instructions." R. 21.

record; (3) the ALJ erred in determining Plaintiff's RFC; and (4) the ALJ failed to properly evaluate Plaintiff's subjective statements.

    **A.    Substantial evidence supports the ALJ's finding that Plaintiff's cataracts and mental impairments were not severe.**

At step two of the sequential evaluation process, the ALJ "must determine whether an impairment is severe, that is, 'whether it significantly limits [a] claimant's physical or mental ability to do basic work activities.'" *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013). The claimant bears the burden of showing severity. *Mathews v. Eldridge*, 424 U.S. 319, 319 (1976). "[A]n impairment is not severe 'if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Gray*, 550 F. App'x at 853. In evaluating step-two challenges, the district court must determine whether substantial evidence supported the ALJ's findings that an impairment was not severe but a slight abnormality that would not be expected to interfere with the plaintiff's ability to work. *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (citing *Lofton v. Schweiker*, 653 F.2d 215, 217–18 (5th Cir. 1981)). Plaintiff claims that the ALJ erred in finding that her cataracts and mental impairments were not severe. Doc. 19 at 2–6. The Court disagrees.

    **1.    Substantial evidence supports the ALJ's determination that Plaintiff's cataracts do not constitute a severe impairment.**

In making his determination, the ALJ relied on Plaintiff's medical records, noting that her visual acuity was once 20/40 bilaterally, her condition was stable, and surgery was not necessary. R. 18, 314–323. A review of Plaintiff's medical records confirms the ALJ's

4

findings. Although she was diagnosed with bilateral cataracts (R. 323), her treatment plan was merely to "continue to monitor[,]" "consider surgery if causes more difficulty with daily activities, [but] OK to defer if happy with vision[,]" and "consider surgery if symptoms should change . . . ." R. 305, 314, 323.

The record also contains non-medical evidence that supports the ALJ's conclusion even though it was not specifically mentioned in the decision. *See Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the court] to conclude that [the ALJ] considered her medical condition as a whole.'") (citing *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995)). For example, Plaintiff spends her time reading, watching television, shopping, and occasionally driving. R. 162–66. Accordingly, more than a scintilla of evidence supports the ALJ's finding that Plaintiff's cataracts are a slight abnormality and do not impact her ability to work.

Plaintiff argues that her cataracts are severe based on medical evidence showing that Plaintiff once measured 20/30 on the right eye and 20/40 on the left eye and showed "evidence of 3+ nuclear sclerosis in both eyes . . . ." Doc. 19 at 4. While there may be some evidence in this record that could support a finding favorable to Plaintiff, substantial evidence supports the ALJ's decision, and he was not required to discuss every piece of evidence. *Dyer*, 395 F.3d at 1211 (citing *Foote*, 67 F.3d at 1558). The record indicates the ALJ considered Plaintiff's condition as a whole, and it was reasonable for him to conclude that Plaintiff's cataracts were not severe. *See id.*

Plaintiff also argues that the ALJ was obligated to discuss the combination of her cataracts with diabetic retinopathy. Doc. 19 at 4. While an ALJ has a duty to consider the combination of impairments at step two, a statement indicating that he did so is sufficient. *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) (citing *Jones v. Dep't of Health & Human Srvs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) ("An ALJ's statement that it has considered a combination of impairments is adequate to meet this standard."). The ALJ stated, "There is also objective evidence in the medical record of impairments that are non-severe in that such impairments establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity . . . ." R. 17–18. Thus, the ALJ adequately considered Plaintiff's combined impairments.

### 2. Substantial evidence also supports the ALJ's determination that Plaintiff's anxiety and depression are not severe impairments.

In making his determination, the ALJ considered Plaintiff's responses to the Adult Function Report, her testimony, mental health treatment, and the state-agency psychologist's evaluation. R. 18–19. The ALJ evaluated Plaintiff based on the broad functional areas of mental health set out in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 18. Plaintiff's responses to the Adult Function Report indicate that she has no difficulty concentrating, following instructions, managing money, or interacting with others. R. 19, 162–170. Plaintiff spends her time socializing with family and friends, reading, watching television, and caring for her family. R.19, 162–66. Although Plaintiff needs reminders to take her medication (R. 164), is easily flustered (R. 168), and does not handle changes well

6

(R. 168, 192), she appears to function well in all other areas. R. 19, 162–66. Plaintiff presents no evidence to the contrary. *See* Doc. 19. The ALJ also concluded that Plaintiff's testimony gave no indication that she has issues self-managing. R. 19, 50–51. In fact, she spends much of her time caring for herself and others. R. 50–51, 162–66. Additionally, the ALJ stressed "the lack of formal mental health treatment in the record" aside from a low-dose prescription for Wellbutrin. R. 19, 50, 66. Finally, the ALJ considered the finding from the state-agency psychologist, Dr. Joanna Koulianos, that Plaintiff has only a mild limitation. R. 19, 65–66. Therefore, substantial evidence supports the ALJ's determination.

### B. The ALJ fully developed the record.

An ALJ "has a basic duty to develop a full and fair record," but the plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). Plaintiff claims that the ALJ was required to order mental and physical evaluations. Doc. 19 at 5–8. The Court disagrees.

### 1. The ALJ was not required to order a mental evaluation.

Under 42 U.S.C. § 421(h)(1), an initial determination "shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure (1) in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review . . . ." Although the Eleventh Circuit once interpreted the provision to require an ALJ to order a consultation whenever a plaintiff's mental health is at issue, *Sneed v. Barnart*, 214 F. App'x 883, 886 (11th Cir. 2006) (citing *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th

7

Cir. 1986)), it has also held that an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (ALJ did not have to order consultative examination because the record contained evidence that plaintiff was intelligent and his depression was alleviated by medication) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *Parker v. Colvin*, No. 3:15CV269-WC, 2016 WL 1092237 at *1, *3 (M.D. Ala. Mar. 21, 2016) (ALJ not required to order evaluation because plaintiff's mental-health treatment reduced symptoms and state-agency consultant found only a mild restriction). Even if 42 U.S.C. 421(h)(1) applies, an ALJ's reliance on a state-agency physician's review is "sufficient to satisfy any requirement imposed by the statute . . . ." *Parker*, 2016 WL 1092237 at *4.

Although the ALJ had an obligation to fully develop the record, he was not required to order a psychological examination. The Eleventh Circuit determined that psychological evaluations are not required where the ALJ has sufficient evidence to make an informed decision. *Ingram*, 496 F.3d at 1269. The ALJ considered Plaintiff's responses to the Adult Function Report, her low-dose prescription, and the state-agency psychologist's opinion. R. 18–19. Thus, substantial evidence existed, making another psychological evaluation unnecessary. However, even if an evaluation was required under 42 U.S.C. 421(h)(1), the ALJ considered Dr. Koulianos's opinion. R. 19. Although Dr. Koulianos was a non-examining physician, the ALJ properly relied on her opinion. *Parker*, 2015 WL 1092237 at *4; 42 U.S.C. § 421(h).

### 2. The ALJ's failure to order a consultative examination was not legal error.

"Ordering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)). Before the Court will remand a case for further development of the record, there must be a showing that the ALJ's failure to develop the record led to evidentiary gaps that resulted in unfairness or clear prejudice. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995)). At a minimum, clear prejudice "requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (citation omitted).

Upon review, the undersigned concludes that the ALJ's failure to order a consultative examination did not result in unfairness or clear prejudice to Plaintiff. At no time during the hearing before the ALJ did Plaintiff or his counsel request an additional consultative examination or suggest that further medical evidence was needed to evaluate Plaintiff's condition (R. 33–59), nor did they argue to the Appeals Council that an additional consultative examination was warranted (R. 81–82). Additionally, it appears the ALJ considered all the medical records that existed from the date of Plaintiff's alleged onset date through the date of his decision, and Plaintiff does not challenge the accuracy of

these records or the ALJ's analysis of these records. *See generally* Doc. 19. Rather, Plaintiff challenges his reliance on the opinion from the state-agency physician, Dr. George Hall. Doc. 19 at 7.

Importantly, Plaintiff "has failed to point to anything in the record which suggests that additional medical evidence specific to [her] situation might be gathered, nor has [she] alleged undiscovered facts or an undeveloped avenue of inquiry." *Graham*, 129 F.3d at 1423. Instead, Plaintiff argues, in a conclusory fashion, that Dr. Hall's opinion creates a "clear deficit in the record . . ." because he was a non-treating physician and only reviewed records dated before the disability onset. Doc. 19 at 7. Plaintiff does not state any limitations she allegedly possesses that the ALJ failed to consider, nor does she state any limitations a consultative examination may support. Instead, she simply speculates that "[b]ecause the record contains no reliable opinions on Ms. Boutwell's physical functioning related to her diabetic complications and musculoskeletal conditions during the period at issue, the ALJ should have requested an evaluation from an examining consultant . . . ." Doc. 19 at 8.

The Court is not persuaded by this argument. An ALJ need not order a consultative examination when the record contains sufficient evidence to support a determination, as it does in this case. *See Doughty*, 245 F.3d at 1281; *see also* 20 C.F.R. § 404.1519a. The mere fact that the ALJ relied, in part, on a non-treating physician's opinion does not create a deficit necessitating a consultative examination. Dr. Hall's opinion was one of many pieces of evidence considered by the ALJ. In fact, the ALJ largely based his opinion on the medical records themselves. R. 22–24. Upon review of Plaintiff's imaging studies, the ALJ

stressed that Plaintiff exhibited normal motor strength, sensation, and reflexes in her upper and lower extremities and was "'grossly neurologically intact . . . .'" R. 22–23. Thus, sufficient evidence supported the ALJ's RFC determination, making an outside consultation unnecessary.

Ultimately, Plaintiff must bear the responsibility and consequences for the limited medical record, as it was her burden, not the ALJ's, to produce medical evidence supporting her claim for disability. *See Ellison*, 355 F.3d at 1276 ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). To the extent Plaintiff believes additional medical evidence would have changed the outcome of this case—though she does not make clear what evidence that might be—she failed to obtain it, failed to provide any reasoning as to why she did not or could not obtain it, and failed to demonstrate that the current medical evidence of record was insufficient to support the ALJ's RFC and disability determination. Thus, the ALJ did not err in failing to order a consultative examination under these circumstances.

C. **The ALJ properly determined Plaintiff's RFC.**

At step four, the ALJ determines "whether the claimant has the [RFC] to perform the requirements of her past relevant work." *Stewart v. Comm'r of Soc. Sec. Admin.*, 746 F. App'x 851, 853 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)(iv)). The ALJ is required to "consider all of the claimant's impairments, including those that are not severe, by considering all relevant medical and other evidence." *Stewart*, 746 F. App'x at 853 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237–40 (11th Cir. 2004); 20 C.F.R. §§

11

404.1520(e), 404.1545, 416.920(e); SSR 96-8p); *see Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 787 (11th Cir. 2016) (upholding RFC because ALJ considered the entire record and mentioned several objective tests). However, an ALJ is not required to refer to every piece of evidence as long as the court can conclude he considered Plaintiff's conditions as a whole. *Dyer*, 395 F.3d at 1211 (citing *Foote*, 67 F.3d at 1558).

Plaintiff argues that the ALJ erred by failing to include "any visual and/or mental restrictions whatsoever in the RFC . . ." and because "[t]he ALJ, as a layman, was unqualified to determine that Plaintiff would have no visual restrictions and that her mental impairments would limit her to no more than unskilled/simple work." Doc. 19 at 6–7. As discussed below, these arguments fail.

The RFC does not explicitly mention visual or mental restrictions. R. 24. However, as discussed above, the ALJ considered all relevant evidence, including medical records, state-agency physicians' opinions, hearing testimony, and activities of daily living, in making his determination. R. 22–24. He properly stated the weight provided to medical opinions in the record and explained how the evidence informed his assessment. R. 23–24. The ALJ did not, as Plaintiff asserts, determine Plaintiff's RFC without relying on medical evidence. Nor did he rely on his own opinions. Specifically, he reviewed and discussed a visual-acuity test wherein Plaintiff measured 20/40 bilaterally. R. 22. Although further discussion of the medical evidence may have been helpful, the ALJ was not required to account for every piece of evidence. *Dyer*, 395 F.3d at 1211. He also discussed the one piece of evidence supporting Plaintiff's mental-impairment claim—the low-dose prescription. R. 23. The record lacked any other mental-health records. Still, because the

ALJ considered all relevant evidence, he properly determined Plaintiff's RFC. *Stewart*, 746 F. App'x at 853; *Herron*, 649 F. App'x at 787.

### D. The ALJ properly evaluated Plaintiff's subjective statements.

When a claimant attempts to prove disability based on her subjective pain complaints, she must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of her alleged symptoms or (2) evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. 20 C.F.R. §§ 404.1529(a), (b) 416.929(a), (b); SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017); *see, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on claimant's ability to work. 20 C.F.R. §§ 404.1529(c), (d) 416.929(c), (d); *see, e.g., Lopez v. Comm'r of Soc. Sec. Admin.*, 6:19-CV-00986-JHE, 2020 WL 6203876, at *1, *6 (N.D. Ala. Oct. 22, 2020). When the ALJ decides not to credit a claimant's testimony as to her pain, the ALJ must articulate explicit and adequate reasons. *Foote*, 67 F.3d at 1561–62. Subjective complaint credibility is the province of the ALJ. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The pain standard is not improperly applied if supported by substantial evidence. *See Foote*, 67 F.3d at 1560–61. When the ALJ applies the pain standard, the next consideration appropriately factors in the credibility of Plaintiff's pain complaints. *See*

*Foote*, 67 F.3d at 1560–61; *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain [under the standard], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).

Plaintiff allegedly experiences pain in her neck, throat, back, and left knee; has headaches, migraines, numbness in her feet, and issues using her right shoulder and hands; and becomes drowsy due to medication. Doc. 19 at 8–9. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. R. 21. The ALJ then evaluated the intensity, persistence, and limiting effects of Plaintiff's pain to determine whether Plaintiff's impairments could produce her pain and found that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 22. In reaching this conclusion, the ALJ considered Plaintiff's testimony, activities of daily living, medical records, and the state-physicians' opinions. R. 21–24.

Plaintiff testified that her numerous ailments cause her a great deal of pain, affecting her activities of daily living. R. 44–50. However, she also testified that she spends her time supervising her son, caring for her pets, watching television, monitoring her blood sugar, and preparing herself meals. R. 50–52. Plaintiff's pre-hearing responses suggest that she is able to engage in even more daily activities. R. 22, 162–66. Indeed, she regularly cares for her family, performs housework, goes outside, drives, pays bills, reads, watches television, socializes with friends and family, and shops at the grocery store. R. 162–66. This evidence is inconsistent with the alleged impact of her symptoms. Doc. 19 at 8–9.

The ALJ also found Plaintiff's statements inconsistent with the medical records. R. 22–24. For example, Plaintiff testified that her diabetes with neuropathy causes tingling down her thigh and swelling in her feet, preventing her from feeling where she steps. R. 48. However, the ALJ noted that Plaintiff's medical records do not reflect issues with swelling, gait, motor strength, sensation, or reflexes in her feet. R. 22, 233, 254, 376, 381, 387. Plaintiff also testified that her degenerative disc disease causes her pain in her lower back that shoots down to her lower extremities. R. 45. She stated that her symptoms, which include numbness, tingling, and throbbing, cause her "constant, constant pain . . ." and make it feel like her knees are giving out. R. 45. However, the ALJ compared these statements to the medical records showing Plaintiff was grossly neurologically intact, had a normal range of motion with pain, and had normal sensation. R. 23, 233, 376, 381, 387. Additionally, her physician only recommended conservative treatments, such as epidurals and physical therapy. R. 23, 273, 396. Plaintiff also testified that a torn meniscus in her left knee made it difficult to walk, sit, or stand. R. 49, 52, 233, 254. Again, however, her medical records show negative straight leg raises (R. 262) and normal gait, motor strength, sensation, and reflexes in her lower extremities. R. 23, 376, 381, 387. Additionally, her treatment plan was rather conservative, consisting only of injections. R. 23, 49–50, 251, 262, 281.

Finally, the ALJ also considered Dr. Hall's conclusion that, contrary to Plaintiff's claims, Plaintiff is capable of light work with certain postural limitations. R. 23, 65. The ALJ found Dr. Hall's opinion persuasive, adding only an additional limitation in light of Plaintiff's neck pain. R. 23.

Upon review of the record, the Court finds that the ALJ had substantial evidence to conclude that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her various symptoms were not consistent with the evidence in the record. In reaching this conclusion and explaining the basis of his decision, the ALJ fulfilled his duty of articulating specific reasons, supported by substantial evidence, to support the discrediting of Plaintiff's disabling complaints of pain. R. 21–24. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."); *Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989) ("[T]he ALJ specifically articulated at least three reasons for rejecting [plaintiff's] subjective complaints of pain," properly discrediting them).

Finally, Plaintiff argues that the ALJ had to consider Plaintiff's strong work history. Doc. 19 at 12. When evaluating the intensity and persistence of a claimant's symptoms, the Social Security Regulations do provide that "all of the available evidence from your medical sources and nonmedical sources" will be considered, "including information about your prior work record." 20 C.F.R. § 404.1529(c)(3). However, a claimant's work history is only one factor to consider when evaluating the alleged symptoms. *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (rejecting claimant's argument that the ALJ should have accepted her testimony about her pain due to her strong work history); *Dudley v. Berryhill*, No. 4:17-CV-01424-AKK, 2019 WL 1281194, at *1, *7 (N.D. Ala. Mar. 20, 2019) (holding that "the record does not support a finding that the ALJ erred in determining [plaintiff's] credibility without reference to prior work ethic"); *Binder v. Comm'r of Soc.*

*Sec.*, No. 3:17-CV-1024-J-PDB, 2019 WL 1397923, at *10 (M.D. Fla. Mar. 28, 2019) (explaining that the ALJ "could have but did not have to weigh [plaintiff's] work history favorably to her."). Although not required, the ALJ discussed Plaintiff's work history in his decision. R. 24. However, Plaintiff's work history was only one of many factors considered. *Edwards*, 937 F.2d at 584; *Dudley*, 2019 WL 1281194 at *7. The Court's primary concern is whether the ALJ's decision *as a whole* is supported by substantial evidence. *Dyer*, 395 F.3d at 1211 (citing *Foote*, 67 F.3d at 1558). As discussed above, it is.

## V. CONCLUSION

Upon review of the evidence, the Court **AFFIRMS**.

For the reasons set forth above, it is ORDERED as follows:

1. The Commissioner's decision is AFFIRMED.

2. A final judgment will be entered separately.

DONE this 27th day of April, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE